UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JERRY GROSS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17-CV-3214 |
| v. | ) |
| | ) Judge Joan B. Gottschall |
| THE PEOPLES GAS LIGHT AND | ) |
| COKE COMPANY and WEC ENERGY | ) |
| GROUP, INC., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Jerry Gross ("Gross") has filed a five-count amended complaint ("AC", ECF No. 21) alleging various violations of federal civil rights statutes: Count I: Race Discrimination-Failure to Promote; Count II: Race Discrimination-Hostile Environment; Count III: Disability Discrimination; Count IV: Age Discrimination; and Count V: Retaliation. The defendants are The Peoples Gas Light and Coke Company ("Peoples Gas") and WEC Energy Group, Inc. ("WEC"). Both defendants move jointly to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that neither was Gross' employer, and Gross has not alleged enough to entitle him to proceed on a joint employer theory. For the reasons stated below, the court finds the allegations against Peoples Gas sufficient at this point to allow Gross to proceed on a joint employer theory as to that defendant. With respect to WEC, however, the court finds the allegations insufficient and grants WEC's motion to dismiss it as a party defendant. The AC is dismissed, with leave to replead, to the extent it asserts claims against WEC.

1

# I. BACKGROUND FACTUAL ALLEGATIONS

The corporate relationships involved are complicated by the AC's lack of clarity but otherwise are fairly ordinary. Gross became employed by Integrys Business Support LLC ("IBS") on June 4, 2012, in the position of Safety Consultant in the Human Resources Department. AC ¶ 5. In 2015, WEC acquired Peoples Gas and Integrys Energy Group ("Integrys Energy") and, according to paragraph 7 of the AC, "*its* subsidiaries, including Peoples Gas and Integrys Business Support, LLC ("IBS")." (Emphasis added.) The meaning of "its" here is mysterious. Does Gross mean that Peoples Gas and IBS are or were subsidiaries of WEC or of Integrys Energy? Confusing, but probably inconsequential.[1]

Although Gross' description of the corporate history is confusing, the important points are not complex and largely uncontroverted by the parties. Gross was employed by IBS on June 4, 2012. In 2015, WEC acquired IBS. IBS was renamed WBS and IBS employees became WBS employees. Thus, it is agreed that Gross was originally an employee of IBS and in 2015, due to corporate acquisitions and name changes, he became an employee of WBS. Beyond that, there is much controversy.

# II. LEGAL STANDARD

As a preliminary matter, although both parties appear to treat the issue of whether Gross has adequately alleged his joint employer theory as jurisdictional, the court does not agree. In an analogous case, dealing with Title VII's requirement that to be liable, an employer must have fifteen or more employees, the Supreme Court ruled that there is nothing in Title VII indicating

---

[1] Even more confusing but almost certainly consequential, Gross has failed to name IBS, his actual employer, in the caption of the AC, although in the body of the AC, he states that he is suing "WEC Business Services, LLC (hereafter "WBS") (formerly Integrys Business Support, LLC (hereafter "IBS")." (AC 1.) A party not named in the caption is not a party defendant, regardless of what the body of the pleading asserts. *See Parker v. Scheck Mech. Corp.*, 772 F.3d 502, 505–06 (7th Cir. 2014); *Miles v. United States*, 416 F.3d 551, 552 (7th Cir. 2005) (citing Fed. R. Civ. P. 10(a)). Gross better amend if he wants to name his employer and fast.

that Congress intended to make the employee-numerosity requirement jurisdictional. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 502 (2006). Similarly, courts treat the issue of whether a Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, defendant is an employer or a joint employer as an element of plaintiff's claim, not as a jurisdictional requirement. *Brown v. ABM Indus., Inc.*, No. 15 C 6729, 2015 WL 7731946, at *3 (N.D. Ill. Dec. 1, 2015). And the Seventh Circuit recently treated joint-employment questions under Title VII as merits issues, reviewing the propriety of summary judgment, rather than as jurisdictional matters. *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 928–30 (7th Cir. 2017). The court finds the analysis set forth in these cases applicable and persuasive here. Whether Peoples Gas and WEC are liable as Gross' employers is a merits question, not a jurisdictional one. The court accordingly treats defendants' motion as a Rule 12(b)(6) motion to dismiss for failure to state a claim.

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When deciding a Rule 12(b)(6) motion, the court must "construe the complaint in the 'light most favorable to the' plaintiff." *Zahn v. N. Am. Power & Gas, LLC*, 847 F.3d 875, 877 (7th Cir. 2017) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)). The court also assumes that all of the well-pleaded facts in the complaint are true and draws reasonable inferences in the plaintiff's favor. *See Iqbal*, 556 U.S. at 678; *Collins v. Vill. of*

---

[2] Defendants also seek a more definite statement of the claim alleged in Count IV. *See* Fed. R. Civ. P. 12(e). That issue is discussed in the text of Part III.D.

*Palatine*, 875 F.3d 839, 842 (7th Cir. 2017) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 615–16 (7th Cir. 2011)); *Tagami v. City of Chicago*, 875 F.3d 375, 877 (7th Cir. 2017) (citing *United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016)).

### III. ANALYSIS

In the Seventh Circuit, "a plaintiff can, under certain limited circumstances, bring a [Title VII] claim against a defendant who is not his direct employer." *Nischan*, 865 F.3d at 928 (quoting *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015)) (alteration omitted). A five-factor test applies to claims of joint employment; under it, the first factor, the "right to control and supervise . . . is the most important." *Id.* at 929 (citing *Love*, 779 F.3d at 703). The five factors follow:

> (1) extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

*Id.* (quoting *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378–79 (7th Cir. 1991)) (alterations and other citation omitted); *see also Dittmann v. ACS Human Servs. LLC*, 210 F. Supp. 3d 1047, 1053 (N.D. Ind. 2016) (stating in joint-employment case that "the ADA define[s] employer as it is defined for purposes of Title VII in section 2000e(b)" (citing 42 U.S.C. §§ 2000ff(2)(B), 12111(5))).

### A. People's Gas

The AC contains the following allegations which bear on Gross' joint employer theory as

to Peoples Gas.

> Throughout his tenure, Plaintiff was assigned to work with Peoples Gas at the Central Shop. Plaintiff performed work at other locations as well, including but not limited to, North and South Shops and Division Street. The Central Shop, North and South Shops, and Division Street are all Peoples Gas facilities. After being assigned to Peoples Gas, Plaintiff was provided with a Peoples Gas' badge and employee ID number (in addition to an IBS badge) and was provided with a Peoples Gas vehicle and work attire. Moreover, Plaintiff was the site leader for Peoples Gas' safety programs and initiatives for the Central, Crawford and Division Street Peoples Gas facilities, and administered their safety training, vehicle accident and occupational injury control programs (affecting Peoples Gas' employees at these very same sites), and was given daily instruction by Peoples Gas management.

AC ¶ 6.

Perhaps because Gross is attempting to be vague, or perhaps because the parties appear not to have located or read recent relevant Seventh Circuit cases, Gross fails to provide key specifics on a number of important points. For instance, he provides great detail about the position of African Americans in "the" Human Resources Department, but fails to specify which company's Human Resources Department he is talking about. AC ¶ 9. Based on his description of his own employment, the court gives him the benefit of a favorable reading of the AC and assumes he is talking about IBS's Human Resources Department. *See* AC ¶ 9. Gross says that he reported to Chuck Wagner and was trained by a senior level Safety Consultant. AC ¶ 13. But he fails to indicate who employed these persons. He alleges elsewhere that he made complaints to "Defendants" but fails to indicate to whom he made the complaints; these persons should be identified to the extent possible and the company for which they work should be specified. AC ¶ 25. Gross similarly fails to specify which individuals (and who employed them) gave him allegedly "unfair performance evaluations" and which individuals (and who employed them) "failed to respond to Plaintiff's complaints." AC ¶¶ 25, 26.

5

The court nevertheless finds the allegations concerning Peoples Gas to be sufficient at the pleading stage, except that Gross cannot leave so many key points so vague, assuming he has relevant information. Gross must attempt to identify what Human Resources Department he is talking about in paragraph 9. *See* AC ¶ 9. He must indicate which company Chuck Wagner, as well as the senior level Safety Consultant, worked for. *See* AC ¶ 13. He must attempt to identify the persons to whom he complained and the company for which they worked. *See* AC ¶¶ 19–20. And he must specify the company which gave him the allegedly unfair performance evaluations. *See* AC ¶ 25. Even if IBS is the answer to all these questions, that information is too important to be left completely unspecified, as long as Gross has (and in most cases he should have) the relevant information. Numerous cases establish that the omission of such key information from a complaint is an indicia of artful pleading, rather than a good faith effort to provide fair notice of a claim. *See, e.g.*, *Ivery v. RMH Franchise Corp.*, --- F. Supp. 3d ----, No. 17 C 1619, 2017 WL 6878099, at *4–6 (N.D. Ill. Dec. 8, 2017) (quoting and citing cases collected in *Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 10 & n.10 (1st Cir. 2012) (finding allegations of joint employment in complaint insufficient and stating that "there is no room for 'game-playing omissions of plainly relevant detail' concerning a plaintiff's direct employer").

With respect to Peoples Gas, the court relies on the following indicia of Peoples Gas' involvement in Gross' job to allege adequately at this point that it was his joint employer: that Gross was assigned to work at Peoples Gas facilities; that Gross was given a Peoples Gas badge and employee ID number; and that he was provided with a Peoples Gas vehicle and Peoples Gas work attire. AC ¶ 6. Further, Gross alleges that he was the site leader for Peoples Gas' safety programs and initiatives for three Peoples Gas facilities. *Id.* He further alleges that he administered the safety training, vehicle accident and occupational injury control programs,

6

affecting Peoples Gas employees at these three sites, and was given daily instruction by Peoples Gas management. AC ¶ 6. Gross has a lot to prove, especially with respect to which company controlled or supervised him, *see, e.g.*, *Love*, 779 F. 3d at 702–03, but he has alleged enough to allow his claim as to Peoples Gas to go forward. *See generally Brown*, 2015 WL 7731946, at *3–4. In order to be in a position to make a decision about Peoples Gas' potential liability early on, the court believes the parties should consider sequenced discovery in this case, looking toward an early summary judgment motion on the involvement of Peoples Gas.

**B. WEC**

The following allegations relate to Gross' theory of joint employment as to WEC.

> Throughout the relevant time period, WEC maintained employee records for all of its subsidiaries. In 2015, WEC Energy Group Inc. had revenue of $503.4 million from its Illinois operations, which is made up entirely of Peoples Gas. Defendants function as an integrated enterprise or joint employer of Plaintiff, and as such may be held liable for the violations of federal law asserted herein. . . . Based on information and belief, employees for WEC Energy, WBS, and Peoples Gas attended or received training on company employment policies primarily drafted by WEC Energy."

AC ¶¶ 7, 9.

Putting aside conclusions, as it must, the court finds the allegations concerning WEC insufficient to make out a plausible claim that WEC jointly employed Gross. *See, e.g.*, *Bruguier v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, 237 F. Supp. 3d 867, 876 (W.D. Wis. 2017) (finding complaint failed to state claim that defendant was employer because complaint contained only "legal conclusions under [the plaintiff's] causes of action . . . that [the defendant] was her 'joint employer'"). Integration of functions among related companies is common, and centralization and integration of functions such as benefits, sharing of directors, use of a common personnel manual and common access to certain computer programs does not justify ignoring corporate form. *See Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 364

7

(7th Cir. 2016) (FLSA case); *see also Nardi v. ALG Worldwide Logistics*, 130 F. Supp. 3d 1238, 1247 (N.D. Ill. 2015) ("For purposes of this case, there appears to be no significant difference between the test articulated in labor law cases and the test that appears in employment discrimination cases: both focus on the extent of control and supervision an entity exerts over the plaintiff, though the economic realities test also examines the financial underpinnings of the relationship."). The facts that a parent company maintained employment records for all of its subsidiaries, enjoyed income from its subsidiaries, and drafted employment policies for all of the related corporations show only that the companies were to this extent centralized and integrated. They do not make plausible a claim that WEC had any involvement in controlling and supervising Gross' work activities, the most important factor in determining whether an employer-employee relationship exists. *See Nischan*, 865 F.3d at 929; *Love*, *supra*, 779 F.3d at 702. There is nothing in the AC that suggests that WEC was responsible for training Gross in the skills needed for his work, that WEC funded the costs of the operations in which Gross was involved, that WEC paid Gross and provided his benefits, or that Gross had any long term employment relationship with WEC. *See Love*, 779 F.3d at 702–05. Indeed, all that Gross has alleged as to WEC is modest, garden-variety integration of functions among affiliated corporations without establishing which defendant had a "direct role in controlling [his] conditions of employment or in determining [his] rate and method of payment." *Sampson v. MediSys Health Network, Inc.*, No. 10-CV-1342 (SJF)(ARL), 2012 WL 3027838, at *4 (E.D.N.Y. July 24, 2012) (dismissing complaint that alleged, among other things, that defendants had "a centralized approach to management and human resources" and "centralized payroll system"). That is not enough to allege a plausible claim that WEC was his joint employer. *See Ivery*, *supra*, 2017 WL 6878099, at *6 and authority cited therein (finding complaint failed to

state joint-employment claim even though two subsidiaries allegedly shared payroll services and contributed to a joint employment policy because "[c]ooperation between affiliates does not imply control"); *Dittmann*, 210 F. Supp. 3d at 1053 (holding allegation that defendant "was authorized by [an affiliate of the plaintiff's employer] to provide access to Xerox's employee health benefits via, among other means, its online computing systems and its clinics" did not state plausible joint-employment claim).

## IV. CONCLUSION

For the reasons stated, the motion of People's Gas and WEC to dismiss the AC (ECF No. 23) is granted in part and denied in part. WEC's motion to dismiss it as a party defendant is granted. Peoples Gas' motion to dismiss it as a party defendant is denied. The AC is dismissed to that extent. Gross is given leave to amend to provide the requested detail concerning paragraphs 9, 13, 19, 20, 25, and 26 as described above. He is also given leave to amend to add IBS as a defendant, which it appears from the body of the AC that he intended to do.[3] Any amended complaint is due on or before 02/07/18. A status conference is set for 02/14/18 at 9:30 a.m.

Date: January 24, 2018                               /s/
                                                    Joan B. Gottschall
                                                    United States District Judge

---

[3] Peoples Gas and WEC moved to dismiss Gross' original complaint on the same grounds. *See* ECF No. 10 at 1. Gross responded and then moved to file the AC, contending that it would "correct any alleged defects in Plaintiff's complaint." Mem. Supp. Mot. Leave to File Am. Compl. 1, ECF No. 16. The court declines to, on its own initiative, give him another chance to plead a plausible claim that WEC jointly employed him. *See, e.g.*, *Stanard v. Nygren*, 658 F.3d 792, 801–02 (7th Cir. 2011) (affirming denial of leave to replead after plaintiff received multiple chances to cure defects under the principle that, under Fed. R. Civ. P. 15(a)(2)'s liberal standard, "[l]eave to replead need not be allowed in cases of 'repeated failure to cure deficiencies by amendments previously allowed.'" (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))).