UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JERRY GROSS, ) | |
| ) | |
| PLAINTIFF ) | |
| ) | |
| v. ) | 17 CV 03214 |
| ) | |
| THE PEOPLE GAS LIGHT AND ) | Judge Joan B. Gottschall |
| COKE COMPANY, WEC BUSINESS ) | |
| SERVICES, LLC (WBS) ) | |
| ) | Magistrate Judge Sheila M. Finnegan |
| ) | |
| DEFENDANTS. ) | |

## PLAINTIFF'S THIRD AMENDED COMPLAINT

Plaintiff, Jerry Gross, by and through his attorney, Chiquita Hall-Jackson of Hall-Jackson and Associates, P.C, sues defendants The People Gas Light and Coke Company (hereafter "People Gas"), and WEC BUSINESS SERVICES, LLC ("hereafter referred to as "WBS" or it's former name Integrys Business Support, LLC (hereafter "IBS"), (collectively Defendants), and alleges damages resulting from the unlawful discriminatory employment practices and actions of the Defendants.

## JURISDICTION AND VENUE

1. Jurisdiction over the statutory violation alleged is conferred as follows: This Court has jurisdiction under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., the Americans with Disabilities Act, 42 USC §§ 12101 et seq., the Americans with Disabilities Act of 2008, the Age Discrimination and Employment Act of 1967, and retaliatory discrimination in employment under 42 U.S.C. § 1981.

2. Venue is Proper in this district pursuant to 28 U.S. C. § 1391, because Plaintiff's cause of action arose in Cook County, Illinois, and the Defendants are doing business in and found within the boundaries of the Northern District of Illinois, Eastern Division.

## PARTIES

3. JERRY GROSS resides in Chicago, Illinois, within Cook County.

4. The defendant is PEOPLE GAS LIGHT & COKE COMPANY (hereafter "Peoples Gas"), a natural gas utility company that operates in Illinois and is incorporated in the state of Illinois. WBS is a service company that provides professional services, such as accounting, safety consulting, claims administration to the operating subsidiaries of WEC Energy Group. WBS is formerly known as Integrys Business Support, LLC (hereafter "IBS") is an energy company that operates in Illinois and is incorporated in the state of Illinois. At all times relevant in this complaint, except of the last three months prior to the Plaintiff filing his EEOC charge of discrimination, the WBS employees are identified as IBS employees.

## Procedural Background

5. On or about September 17, 2015 the Plaintiff filed a charge against the Defendants with the U.S. Equal Employment Opportunity Commission (EEOC), alleging that the Defendants discriminated against him based on race, age, retaliation, and disability. (Exhibit A).

6. On or about January 31, 2017 the Plaintiff received a Notice of Right to Sue letter from the EEOC, which allowed Plaintiff to commence a civil action with the appropriate Court within 90 days of his receipt of the letter.

## Facts

**7.** Plaintiff is an African American male that was over 40 years of age at all times referenced in this complaint.

8. Plaintiff has been diagnosed with Osteoarthritis and Pseudogout, which are defined as a disability according to the ADA.

9. Plaintiff applied to Peoples Gas in 2012.

10. Based on his application with Peoples Gas the Plaintiff received an offer to interview with IBS in 2012.

11. Plaintiff began employment with IBS on June 4, 2012 in the position of a Junior Safety Consultant.

12. His duties included developing and implementing human resources safety policies across various business units of Integrys Corporation, developed new initiatives to improve the operating performances of human resources and safety at the business unit and corporate level of this utility company, and designed programs for the implementation and measurement of a variety of human resources programs ranging from Productivity Improvement, HR strategic planning, training and Injury Management.

13. Plaintiff was placed at the Central Shop where he reported to Charles Wagner, a Manager of Corporate Safety for IBS.

14. Mr. Wagner maintained a team of seven individuals, including the Plaintiff.

15. Mr. Wagner conducted weekly teleconferences on Tuesday mornings with his team to establish goals for the week. He also held a monthly meeting to outline the goals for the upcoming month and to recap the current month.

16. In all meetings conducted by Mr. Wagner he gave broad directions and goals for his team.

17. In addition to the Plaintiff's weekly and monthly meetings with Mr. Wagner he also would meet weekly with the plant manager of whatever shop he was assigned to.

18. During the first two years of his employment the Plaintiff was assigned to the central shop and worked under the direct supervision of Dave Lazzaro. Mr. Lazzaro was People's Gas Plant Manager for the central shop.

19. Mr. Lazzaro met with the Plaintiff on a weekly or bi-weekly basis on a Monday to establish his job assignments for the week. The meetings were centered around recent safety performance issues, such as accidents, injuries, and equipment issues over the past few weeks. Mr. Lazzaro would also delegate certain task to the Plaintiff for the week. The assignments were sometime bi-weekly based on the availability of Mr. Lazzaro.

20. Mr. Lazzaro would hold a monthly meeting for each employee under his leadership, and this included the Plaintiff.

21. The Plaintiff met with Mr. Lazzaro during his first two years with IBS.

22. Sometime in 2014, Cal Arroyo, People's Gas, transitioned in the role of plant manager and took Mr. Lazzaro's place. However, under Mr. Arroyo the Plaintiff was operating out of the central shop, Crawford shop, and Division shop.

23. Mr. Arroyo kept the same meeting schedule as Mr. Lazzaro in his role as plant manager.

24. During the Plaintiff's later years with the company he reported to People's Gas' Plant Manager, Ken Galo.

25. Under Mr. Galo the Plaintiff met in a group of four to outline everyone's weekly or biweekly tasks. The meeting consisted of Mr. Galo, Ken G., the Plaintiff, and an individual from customer services.

26. While working with each People's Gas' plant manager the Plaintiff still reported to Charles Wagner of IBS as outlined above.

27. The Plaintiff wore a People's Gas uniform to work. He drove a People's Gas vehicle to work. All equipment and tools he used to perform the essential functions of his job were issued and maintained by People's Gas. He performed his daily work duties and responsibilities out of the People's Gas shops. He maintained a People's Gas and an IBS work badge to access all buildings to perform his work duties.

28. Peoples Gas is a natural gas utility company operating in the State of Illinois. In April of 2015 WEC Energy Group, Inc., a Midwestern electric and natural gas delivery company acquired People Gas & Light and Integrys Energy Group and its subsidiaries, including Peoples Gas and Integrys Business Support, LLC, and all companies continued to operate within WEC Energy Group, Inc.

29. IBS was renamed WEC Business Services, LLC ("WBS") in or about 2015.

30. Upon the Plaintiff filing his charge of discrimination with the EEOC he named WEC Energy and People Gas as his employer. However, his detailed intake summary to the EEOC included Integrys as his employer, which became WBS. (Exhibit D).

31. However, on October 26, 2015 WEC Business Services, LLC (WBS) submitted a position statement to the EEOC in response to Gross' Charge of Discrimination dated September 17, 2015. (Exhibit C)

32. WBS was provided with adequate notice when it received a copy of Gross's September 17, 2015 charged addressed to WEC Energy and People Gas outlining the alleged violations.

33. By WBS submitting its response on behalf of all Respondents on October 26, 2015 it was given the opportunity to participate in conciliation proceedings aimed at voluntary compliance.

34. WEC Energy's and WEC Business Services, LLC (WBS)'s interest are similar for the purpose of obtaining voluntary conciliation and compliance that one may deem it unnecessary to name WBS as a party in the EEOC proceedings.

35. WBS represented to Gross and the EEOC Investigator that Gross's relationship with WEC, People's Gas, and Integrys are to be through WBS when it responded on behalf of all named Respondents on October 26, 2015.

36. Throughout the time that Plaintiff was employed with the Defendant, Plaintiff met or exceeded Defendant's job expectations.

### COUNT I: RACE DISCRIMINATION-FAILURE TO PROMOTE

37. Plaintiff hereby repeats and realleges each and every allegation in paragraph 7-37, inclusive, as if fully set forth herein.

38. During 2012-May 28, 2015, while employed by IBS as a Safety Consultant the Plaintiff applied for five other positions that would have promoted him within the company. Some positions were deemed People's Gas' position while others were a promotion within IBS.

39. The job titles consisted of the following: Business Developer-ITF, Director Corporate Security, HR Business/Labor Consultant, Employee Relations Consultant, and Manager of Workforce Planning.

40. The Plaintiff was quailed for all five positions based on his experience, education, and other relevant factors.

41. The Plaintiff was not selected for any of the five promotions in which he applied for.

42. Other non-African American individuals that were less quailed and less experienced than the Plaintiff were granted the positions.

43. Based on the Plaintiff's observation and personal knowledge other African American employees have been denied promotions and subjected to disparate treatment.

44. The Plaintiff complained to several IBS managers about the disparate treatment he noticed in the selection process for upper managerial position within the company; including Charles Wagner.

45. As a result, the Plaintiff received a negative performance evaluation in 2015 that did not reflect his work performance.

46. Based on information and belief the Plaintiff believes this was done to negatively affect his chances of promotion.

47. Both People's Gas and IBS discriminated against Plaintiff on the basis of his race when passing him and other African Americans up for promotions.

48. Defendant has discriminated against Plaintiff on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, by creating, fostering, accepting, ratifying and/or otherwise failing to prevent or to remedy discrimination and mistreatment of Plaintiff because of her race.

49. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, Plaintiff has suffered and continue to suffer severe anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

50. Defendant's unlawful and discriminatory conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## COUNT II - 42 U.S.C. §1981 - RACIAL DISCRIMINATION-DISPARATE TREATMENT

51. Plaintiffs restate and reallege paragraphs 7- 50 as if fully set forth herein.

52. Section 1977 of the Revised Statutes, 42 U.S.C. § 1981, as amended, guarantees persons of all races the same right to make and enforce contracts, regardless of race and/or color. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

53. Defendants, jointly, maintained discriminatory employment practices and engaged in a pattern or practice of systemic race and/or color discrimination against African Americans that constitute illegal intentional race discrimination in violation of 42 U.S.C. § 1981. This includes its hiring practices of African American for advanced and higher-level positions within the company.

54. The Plaintiff being the only African American in his department he was responsible for more duties than any of his colleagues.

55. Within several months of employment, Plaintiff began conducting training programs for People Gas & Light and took over the daily responsibilities of the Senior Safety Consultant Jake Wilkins, without receiving additional pay or promotion.

56. When he confronted Charles Wagner about the increase in duties without pay he was disregarded.

57. It took quite some time before Jake's position was fulfilled. In the meantime, the Plaintiff maintained his duties for over one year.

58. Upon IBS hiring a new younger female employee, Dani, the Plaintiff already had the most work of any other person in his department.

59. Upon Dani being hired things only got worse. She failed to arrive to teach her training classes and failed to perform other job duties. In return, Wagner required that the Plaintiff do her work.

60. Anytime the Plaintiff challenged the idea of him performing the duties of other employees he was threaten with being written up for being insubordinate. This did not happen for his non-African American counterparts.

61. When a non-African American employee failed to or refused to perform their duties then Wagner just made it an extra duty for the Plaintiff.

62. The Plaintiff was required to set up other employees training rooms and get coffee while similar situated employees did not have to do so.

63. The Plaintiff and other African Americans were passed over for promotions and higher-level positions within both People's Gas and IBS.

64. The Plaintiff complained about the disparate treatment between himself and non-African American employees and his complaints were left unaddressed.

65. Defendants discriminated against Plaintiff on the basis of his race in violation of Section 1981 by denying him the same terms and conditions of employment as described above, including, but not limited to, denying him equal treatment and the enjoyment of all benefits, privileges, terms and conditions of contractual relationship.

66. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Section 1981, Plaintiff has suffered and continue to suffer severe anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

67. Defendant's unlawful and discriminatory conduct in violation of Section 1981 was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

### COUNT III-DISABIITY DISCRIMINATION

68. Plaintiffs restate and reallege paragraphs 7- 68 as if fully set forth herein.
69. Plaintiff has a disability which includes osteoarthritis, which condition affects Plaintiff's abilities to walk long distances and climb stairs, and which limits one or more of his major life activities.
70. Defendants was made aware of the Plaintiff's disability within the meaning of the ADA, when he submitted several version of his return to work forms and medical records
71. The return to work forms and supporting documentation was sent to the Plaintiff's immediate supervisor, Chuck Wagner, and Susan Todey, Business consultant and those members of Matrix Absence Management department.
72. The Plaintiff's accommodations requests were made both in writing and verbally.
73. Plaintiff restrictions consisted of limited standing, walking, squatting, climbing, bending, and reaching in excess of four hours per work day. Some activities were restricted completely, such as squatting and climbing.
74. Despite such restriction the Plaintiff was made to climb ladders and perform several other tasks that were not in accordance to his requested accommodations.
75. Defendants treated Plaintiff differently and less favorably than similarly situated employees whom it did not regard as suffering from a disability within the meaning of the ADA.
76. Plaintiff was able to perform the essential functions of his position with a reasonable accommodation and Defendants had available work, which Plaintiff could perform.
77. Defendants were under a duty to accommodate Plaintiff's disability within the context of the ADA, which Defendants failed to do although reasonable accommodations were available.
78. IBS failed to accommodate the Plaintiff during 2014 through September 2015.

79. Defendants failed to promote Plaintiff to positions for which he was well qualified, and which would have required less physical activity, in an effort to further harass Plaintiff and subject him to disability related animus.

80. Plaintiff was subjected to negative comments about his disabling condition during work meetings. When Plaintiff complained, Plaintiff's supervisor continued to make negative comments. Plaintiff then complained further about his supervisor's behavior. Defendants failed to respond.

81. Defendants were under a duty not to discriminate against Plaintiff based on his disability.

82. The Defendant's actions only exacerbated the Plaintiff's disability.

83. As a direct, foreseeable, and proximate cause of Defendant's conduct, Plaintiff has suffered, and continues to suffer, damages, including emotional and mental anguish from attorneys' fees, and costs.

## COUNT IV- AGE DISCRIMINATION

84. Plaintiffs restate and reallege paragraphs 7- 84 as if fully set forth herein.

85. Plaintiff was born in 1952 and was over forty years old at all relevant times referenced in this complaint.

86. The Plaintiff applied to five positions while employed at IBS. The positions consisted of both People's Gas and IBS positions.

87. Based on information and belief, younger employees similarly situated to Plaintiff were promoted to positions for which Plaintiff was well qualified.

88. Plaintiff was made to train younger, less qualified candidates for positions which he sought, but was denied.

89. A different decision would have been made to promote the Plaintiff but for his age.

90. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the Age Discrimination in Employment Act of 1967, the Plaintiff has suffered and continue to suffer severe anguish and emotional distress, including but not limited to

humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

91. Defendant's unlawful and discriminatory conduct in violation of the Age Discrimination in Employment Act of 1967 was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## COUNT V-RETALIATION

92. Plaintiffs restate and reallege paragraphs 7- 92 as if fully set forth herein.

93. Section 1981 makes it unlawful for an employer to retaliate against an employee because that employee engaged in protected activity, such as complaining to an employer about discrimination on the job.

94. Plaintiff complained of race, age, and disability discrimination. Plaintiff filed an internal complaint with Bill Lasko, Vice President of Human Resources and also with John Klycinski, Manager of Human Resources/Labor at the time when he complained about not being promoted; Plaintiff further complained about not being promoted into the Senior Safety Consultant's position based on his race.

95. Plaintiff requested a reasonable accommodation for his disabling condition. Thereafter, Plaintiff complained that Defendants failed to respond to his requests, and also that his supervisor made negative disability related comments.

96. After Plaintiff complained to Bill Lasko, Plaintiff's supervisor Chuck Wagner began to treat Plaintiff in a demeaning and humiliating manner. Plaintiff's coworkers were permitted to pass on assignments, but Plaintiff was not. Plaintiff was told to make coffee and set up

the room for Chuck Wagner's class, while others were not given those tasks. Plaintiff was made to instruct classes for a junior level non –African American coworker who did not show up to conduct her scheduled training classes. Plaintiff was not assigned to classes to improve his safety consulting skills; others were routinely assigned to such classes.

97. On or about August 10, 2015, Plaintiff complained about lack of advancement opportunities for minorities, male and female, and his own lack of advancement opportunities as an African American male. After Plaintiff complained to Defendants about the discriminatory statements made by his supervisor, the harassment became worse.

98. Defendants continued to discriminate against Plaintiff on basis of his race, age, and/or disability in the terms and conditions of his employment, to subject Plaintiff to a hostile environment, and to continue to deny him promotional opportunities, such discrimination was an unlawful act of retaliation.

99. Defendants took adverse actions against Plaintiff in retaliation for engaging in protected activity, in violation of 42 U.S.C. § 1981.

100. As a direct and proximate result of Defendant's unlawful discriminatory and retaliatory conduct in violation of Section 1981, Plaintiff has suffered and continue to suffer severe anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

101. Defendant's unlawful discriminatory and retaliatory conduct in violation of Section 1981 was outrageous and malicious, was intended to injure Plaintiff, and was done with

conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States and the State of Illinois;

B. An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C. An order directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's discriminatory and harassing treatment and otherwise unlawful conduct, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect his employment and personal life;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputations and loss of career fulfillment;

F. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for his mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

G. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

H. An award of punitive damages;

I. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

J. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

**Dated: February 19, 2019**

Respectfully submitted,

/s/Chiquita Hall-Jackson

                                                                                                              Chiquita Hall-Jackson, Esq.

Chiquita Hall-Jackson, Esq.
Attorney for Plaintiff
Hall-Jackson & Associates, P.C.
166 W. Washington St., Suite 275
Chicago, IL 60602
312-255-7105